IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2005 NOV 14  P 6: 41

ROBERT ANDREW WERMUTH, )
#189991, )
 )
    Plaintiff, ) Case No. 2:05cv644
 )
SHANNON CARROL YOUNGBLOOD, )
et al., )
 )
    Defendants. )

## SUPPLEMENTAL RESPONSE, WRITTEN REPORT AND ANSWER OF DEFENDANTS EVERETTE L. JOHNSON, DAVID R. HILL, AND RODERICK BYRNE AND SHANNON YOUNGBLOOD TO PLAINTIFF'S AMENDED COMPLAINTS

Defendants, Everette L. Johnson ("Johnson"), David R. Hill ("Hill"), Roderick Byrne ("Byrne") and Shannon C. Youngblood ("Youngblood"), by and through undersigned counsel and, adopt and incorporate by reference the Original Response, Written Report and Answer with Exhibits A – H attached as evidentiary submissions; and in accordance with this Court's Orders of October 4 and October 27, 2005, submit this Supplemental Response, Written Report and Answer with Original Exhibits I – K (and copies of Exhibits of A-H) as evidentiary submissions, to Plaintiff's Complaint and Amended Complaints.

### I. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

The Complaint and Amended Complaints have been brought by Plaintiff Robert Andrew Wermuth who, on September 30, 2003, was arrested for attempted assault in the first degree. *(See Certified Copy of Case Number 03-25505 attached to Defendants' Supplemental Response and Written Report as Exhibit I).* Plaintiff originally named as Defendants, Officers Shannon Carrol Youngblood and R.D. Calhoun, as well as fictitious parties.

Plaintiff contends that Defendants violated his Eighth Amendment constitutional rights against cruel and unusual punishment as more specifically in Ground 1-3 of the Original Complaint as follows:

**Ground One**: Defendants Youngblood and Calhoun Violated Plaintiff's U.S.C.A. Right Against Cruel and Unusual Punishment, Const.-Amend. #(8). Defendants Youngblood and Carrol, on or about September 30, 2003, after getting out of my car, in my driveway, I voluntarily surrendered myself to the police and laid face down on the ground behind my vehicle in my driveway. Defendants Youngblood and Calhoun approached me with his gun drawn and at that point said officer(s) knelt down on top of my back with gun(s) in their hands and while in this position another officer officer approached me and released a police dog and told said dog to attack me.

Plaintiff shows to this Court that your plaintiff was cooperating with the officers and was laying face down with arms in plain view of the officers.

Plaintiff further shows to this Court that without warning the defendant(s) ordered the police dog to attack you Plaintiff.

During this attack plaintiff was so severely attacked that your plaintiff needed immediate medical attention.

**Ground Two**: Assault with a vehicle while trying to stop me for a misdemeanor violation of the Eighth Amendment to the United States Constitution. Plaintiff was allegedly being chased by the Defendant's for allegedly taking (36) cans of beer. Plaintiff was pursued through a residential neighborhood and one of the defendant's and or their agents slammed his vehicle into my vehicle on two different occasions and at one time pushed me through a four lane intersection putting my life in danger along with other motorists who were put in danger. Said defendant(s) and or their agents ran into the back of my vehicle twice in an attempt to cause me to crash and as such caused damage to my vehicle. This incident happened at the intersection of Hill and Day Street on or about September 30, 2003.

Defendant were careless and reckless about their actions not only to myself but to other motorists in the area.

Plaintiff shows to this Court that the Montgomery Police Department and or their agents are known to beat, misuse force, and put motorists at danger during their pursuit, all for (36) cans of beer.

**Ground Three:** Defendants on or about September 30, 2003, ordered their police dog to attack me in violation of U.S.C.A. #(8). While laying on the ground face down the Defendant and/or their agents ordered their police dog to attack me when I was not a threat to said officers or any other individual. Defendant and/or their agents by participating or even lack of participation to stop the attack made all the officers present culpable. Defendant suffered both mental and physical injuries and had to have immediate medical attention, which, your Plaintiff, to this day and for the rest of his life will severe scars from the attack by the defendants' police dog.

Plaintiff further shows to this Court that this attack started with the defendant's and or their agents command to attack your Plaintiff.

Plaintiff further shows to this Court that the attack lasted for (3-5) minutes and I was scared for my life while the defendant's and their agents watched you Plaintiff being attacked, and, the whole time I was scared for my life and in terrible pain from the police dog's attack upon the plaintiff.

Plaintiff further shows to this Court that said defendant(s) and or their agents stood around and watched as the commenced and continued against your plaintiff while the officers stood around and watched and noone would come to your plaintiff's aid even though I begged then several times to please stop the attack against me.

On August 24, 2005, Defendants Youngblood and Calhoun filed their Original Response, Written Report and Answer with Exhibits A-H attached as evidentiary submissions in support of their response.

3

The Court allowed Plaintiff to amend his Complaint on October 4th in which he alleges excessive force and the torts of assault and battery, as well as Eighth Amendment violations. Plaintiff dismissed original named Defendant R. D. Calhoun, however added Defendants Johnson, Hill and Byrne in their individual capacities. Additionally, in the First Amended Complaint, Plaintiff only refers to Ground One and Ground Two in the Original Complaint and not Ground Three. Likewise, the Second Amended Complaint allowed by Order of the Court on October 27th appears that Plaintiff is relying only on Grounds One and Two of the Original Complaint.

Additionally, the Second Amended Complaint identifies that individual named Defendants were acting as police officers during the incident that is the basis of this lawsuit and sets out that Ground One applies to Officers Johnson, Byrne and Hill and Ground Two applies to Sgt Youngblood. Again there is no mention of Ground Three from the Original Complaint and which Defendants stated in their Original Response and Written Report is duplicitous of Count One.

## II.    STATEMENT OF THE FACTS

On Tuesday, September 30, 2003 at approximately 3:45 a.m., two Montgomery Police Officers, J.C. Welch and M.C. Deramus, were on routine patrol of their district when they were flagged down by the clerk of a convenience store requesting that they stop the vehicle in the parking lot. *(See Affidavits of Officers James C. Welch and Melva C. Deramus attached to Defendants' Original Response and Written Report as Exhibits A and B).*

Officers Welch and Deramus approached the vehicle and asked the driver to exit the vehicle. Plaintiff refused to comply with the officers' orders and, instead, continued his attempts

to start his vehicle. The officers noticed that the steering column of Plaintiff's vehicle had been "popped" and Plaintiff was attempting to start the vehicle with a screw driver. Again, the officers demanded that Plaintiff exit the vehicle, but he still refused to comply. At this time, Officer Welch reached into the vehicle and grabbed hold of the Plaintiff in an attempt to physically remove him from the vehicle. Plaintiff, at this point, was able to start the vehicle and he drove away, dragging Officer Welch approximately thirty (30) feet before Officer Welch could release himself. Officer Welch fell to the pavement sustaining injuries to his left hand, arm and elbow which eventually required several months of medical treatment. In his attempts to flee the parking lot, the Plaintiff also struck the patrol unit vehicle. *(See Affidavits of Officers James C. Welch and Melva C. Deramus attached to Defendants' Original Response and Written Report as Exhibits A and B)*.

Plaintiff sped away from the convenience store and a lookout was issued for the Plaintiff and a description of his vehicle. Sergeant Youngblood was traveling east on Atlanta Highway when he observed a vehicle that matched the vehicle description issued in the lookout. *(See Affidavit of Shannon Carrol Youngblood attached to Defendants' Original Response and Written Report as Exhibit C)*. Sergeant Youngblood turned around and attempted to catch up with Plaintiff's vehicle, the vehicle increased his speed and began making quick turns onto side streets without slowing down or stopping first. The vehicle that Plaintiff was driving was not registered to him. Youngblood called dispatch to run the necessary checks on the vehicle to see if it was stolen and inquire as to the charges against the driver. Youngblood was advised of a Theft 3rd charge against the Plaintiff; and, was also advised by Officer Welch that the driver was also wanted in reference to a code 26 (hit and run) with a police vehicle and also for striking a

police officer. *(See Affidavit of Shannon Carrol Youngblood attached to Defendants' Original Response and Written Report as Exhibit C).*

At the interchange of Interstates 85 and 65, Sergeant Youngblood attempted to initiate a traffic stop using both his emergency lights and sirens, but the Plaintiff continued onto Day Street. Plaintiff continued to ignore Sergeant Youngblood's attempts to pull him over and, instead, was driving recklessly, making radical turns and approaching speeds of 55 mph in residential areas. *(See Affidavit of Shannon Carrol Youngblood attached to Defendants' Original Response and Written Report as Exhibit C and Affidavit of David R. Hill attached to Defendants' Supplemental Response and Written Report as Exhibit J ).*

The pursuit had originally started at the Kwik Shop on the Northeastern Boulevard around 3:47 a.m. and approximately 25 minutes later as the pursuit approached Hill Street and Plaintiff's vehicle began to turn left onto Hill Street and Sergeant Youngblood's patrol car he collided into the rear of Plaintiff's vehicle. Plaintiff's vehicle continued across Day Street on Hill, and Sergeant Youngblood stopped his vehicle and requested assistance. *(See Affidavit of Shannon Carrol Youngblood attached to Defendants' Original Response and Written Report as Exhibit C).*

Defendant R. D. Calhoun and his partner, Officer Barrier, responded to the accident and prepared an accident report which indicated an accident time of 4:11 a.m. *(See Affidavit of Rodrick D. Calhoun attached to Defendants Original Response and Written Report as Exhibit E).* Sergeant Youngblood did not rejoin the pursuit of Plaintiff and neither he nor Officer Calhoun was present when Plaintiff was taken into custody. *(See Affidavit of Shannon Carrol Youngblood attached to Defendants' Original Response and Written Report as Exhibit C).*

6

Sergeant Johnson, Officer Hill and his partner and Lt. Byrne continued to follow the subject after Youngblood's patrol car was stopped by the accident with Plaintiff. Officer Byrne passed Hill and his partner and continued in the pursuit, as well as, Defendant Johnson *(See Affidavit of Everette L. Johnson attached to Defendants' Original Response and Written Report as Exhibit E and Affidavit of David R. Hill attached to Defendants' Supplemental Response and Written Report as Exhibit J )*.

After the accident with Youngblood, Plaintiff continued to flee through several streets until he pulled into a driveway, exited his vehicle, and attempted to run. Sergeant Johnson gave repeated warnings of "stop or I will release my dog." *(See Affidavit of Everette L. Johnson attached to Defendants' Original Response and Written Report as Exhibit E).* Sergeant Johnson's K-9 partner, Jethro, was released. Plaintiff tripped and fell as he was running from Sergeant Johnson and Jethro engaged Plaintiff in his right arm. *(See Affidavit of Everette L. Johnson attached to Defendants' Original Response and Written Report as Exhibit E).*

Pursuant to police officer training, Lt. Byrne ordered all officers at the scene to stay back because Jethro was engaged and Johnson could not get physical control over Plaintiff. As Johnson held onto Plaintiff, he called for another officer to assist him take the subject into custody and Officer Hill responded. *(See Affidavit of Everette L. Johnson attached to Defendants' Original Response and Written Report as Exhibit E and Supplemental Affidavit of Everette L. Johnson attached to Defendants' Supplemental Response and Written Report as Exhibit K ).* With the assistance of Defendant Hill, Sergeant Johnson took the Plaintiff into custody. Plaintiff was treated for puncture marks at the scene and transported to the hospital for further treatment. *(See Affidavit of Everette L. Johnson attached to Defendants' Original*

*Response and Written Report as Exhibit E and Affidavit of David R. Hill attached to Defendants' Supplemental Response and Written Report as Exhibit J).*

Officer Welch was subsequently diagnosed with a fracture to the right head of the radius bone which required continued treatment. *(See Affidavit of James C. Welch attached to Defendants' Original Response and Written Report as Exhibit A).*

Plaintiff was convicted of Assault 2nd Degree in *State of Alabama v. Robert Andrew Wermuth,* in the Circuit Court of Montgomery County, Case No. CC 2004-106.

Martha L. Humphrey was identified as the registered owner and insured of the vehicle, not the Plaintiff. Ms. Humphrey's insurance company paid both claims associated with the damage to the police vehicles caused by Plaintiff as he attempted to elude police officers on September 30, 2003. *(See Exhibit H attached to Defendants' Original Response and Written Report).*

### III. DEFENDANTS' SUPPLEMENTAL RESPONSE AND ANSWER

#### A. DEFENDANTS DENY ALL ALLEGATIONS AND THAT PLAINTIFF IS ENTITLED TO ANY RELIEF.

Plaintiff has alleged that his rights to be free from cruel and unusual punishment and excessive force were violated, as well as, that he was subject to the torts of assault and battery. Defendants deny that they have violated any of Plaintiff's constitutional rights or have committed any tortuous acts against Plaintiff. Defendants Byrne, Hill and Johnson, named in Plaintiff's First and Second Amended Complaint adopt and incorporate by reference the Written Report, Response and Answer with Affirmative Defenses and Exhibits A-H submitted as evidentiary submissions of Defendant Youngblood to the Original Complaint. Plaintiff claims

8

many forms of relief to including, but not limited to; punitive damages, medical damages for reconstructive surgery, emotional distress and trauma, lost wages and repair for damage to the vehicle that he was driving.

Defendants deny that Plaintiff is entitled to any relief and the Defendants are entitled to dismissal of all claims. Defendants have not violated Plaintiff's constitutional rights and have not committed assault and battery on Plaintiff. Plaintiff was convicted on Assault 2nd and has been in prison so his claim for lost wages is without merit. Additionally, not only did Plaintiff not own the vehicle, the insurance carrier of the vehicle Plaintiff was driving paid the City for damages to the city vehicles caused by Plaintiffs intentional and reckless actions.

Plaintiff alleges Eighth Amendment violations and references, in his prayer for relief, that Defendants failed to stop physical abuse of prisoners. However Plaintiff was not a prisoner but a suspect in the commission of the felony of assault on September 30, 2003. In his First Amended Complaint, Plaintiff alleges excessive force and the tort of assault and battery. It appears that Plaintiff is basing this lawsuit on events that occurred on September 30, 2003 and not by any government official after his assault conviction.

When an excessive force case arises in the context of an arrest or investigatory stop, it is considered in the context of the Fourth Amendment's guarantee against unreasonable seizures. *Graham v. Conner*, 490 U.S. 386, 394 (1989)(holding that excessive force claims are properly analyzed under the Fourth Amendment and not under the substantive due process standard). The Fourth Amendment's "objective reasonableness" standard is applied, which requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 395-396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

> The question the court must answer is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent." [*Graham*, 490 U.S. at 397]. The Supreme Court's Fourth Amendment jurisprudence has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Consequently, the proper application of the "objective reasonableness" test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Furthermore, the reasonableness of the force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The court must allow for the fact that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving..." *Id.* at 397.

*Hendon*, 163 F. Supp.2d. at 1322.

The Eleventh Circuit has provided further guidance, and when determining whether an officer's use of force was objectively reasonable, the court should consider, "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992)(quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986).

As alleged by Plaintiff in the present case, it is undisputed that Defendants were acting in their capacity as police officers therefore satisfying the first prong of the qualified immunity test. Plaintiff has alleged that Defendants "arbitrarily and capriciously" violated his constitutional rights but completely ignores the actual facts of the case. Plaintiff contends that Defendants chased him due to his committing a misdemeanor theft of two 18 packs of beer. However Plaintiff does not address the fact that he assaulted an officer, hit one patrol car in the parking lot of the convenience store before fleeing from police for approximately 25-30 minutes in which he

was involved in another accident with a police vehicle before he allegedly "voluntarily surrendered".

Furthermore, the Eleventh Circuit has "established the principal that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). Additionally, the Eleventh Circuit continues to analyze Fourth Amendment claims of excessive force in terms of whether the injuries sustained and the amount of force applied indicate that the force was excessive. *Ruby v. Baptist Medical Center*, 21 F.Supp.2d 1341, 1350 (M.D. Ala. 1998)(citing *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997); *Robinson v. Brown*, 987 F.Supp. 1470 (S.D. Fla. 1997).

### B. DISCRETIONARY FUNCTION IMMUNITY.

Defendants are entitled to discretionary function immunity for allegations of assault and battery. Section 6-5-338(a), Code of Alabama, 1975, provides immunity for peace officers from tort liability for conduct in the line of duty. Specifically, in relevant part:

> "Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."

11

"Discretionary functions" are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Sheth v. Webster, 145 F. 3d. 1231, 1239 (11th Cir. 1998).

It is undisputed that Plaintiff had stolen two eighteen packs of beer from the convenience store. *(See Plaintiffs' Complaint and Amended Complaint and Affidavit of James C. Welch and Melva C. Deramus attached to Defendants' Original Response and Written Report as Exhibits A and B).* Officers responded to a clerk from the store that flagged them down and indicated that Plaintiff had stolen the beer. *(See Affidavit of James C. Welch and Melva C. Deramus attached to Defendants' Original Response and Written Report as Exhibits A and B).*

The officers attempted to stop Plaintiff to question him about the theft but he refused to stop and fled dragging Officer Welch until Welch had to let go of the car. *(See Affidavit of James C. Welch and Melva C. Deramus attached to Defendants' Original Response and Written Report as Exhibits A and B).* It was at that time that the lookout was posted Defendant officers, acting within the line and scope of their duties, responded to the pursuit for an attempted assault and hit and run by Plaintiff. *(See Affidavit of James C. Welch, Melva C. Deramus, Shannon Carrol Youngblood and Everette L. Johnson attached to Defendants' Original Response and Written Report as Exhibits A, ,B C and E).*

Plaintiff has failed to offer support to any allegations of willful or malicious conduct or conduct engaged in bad faith by the Defendant officers. Defendant officers acted lawfully and within the line and scope of their duties and as such are entitled to discretionary function

immunity from tort liability unless their conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith. §6-5-338, *Code of Alabama,* 1975.

C. **QUALIFIED IMMUNITY.**

Additionally, based on the above, all Defendants are entitled to the affirmative defense of qualified immunity for allegations of constitutional violations pursuant to 42 U.S.C. § 1983 against Defendants sued in their individual capacities. *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).*

All Defendants are entitled to qualified immunity in the present case. Qualified immunity protects government officials acting within their discretionary authority from liability from civil trials and from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). Having established the first requirement, the burden shifts to the Plaintiff to prove that qualified immunity is not warranted.

*Id.* First "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Sammons v. Taylor*, 967 F. 2d 1533, 1539 (11th Cir. 1992). "Then the burden shifts to the plaintiff to demonstrate that the defendant 'violated clearly established constitutional law.'" *Id.*

Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the federal "rights" allegedly violated were "clearly established." *Barts v. Joyner*, 865 F. 2d 1187, 1190 (11th Cir. 1989), citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985). For the law to be clearly established to the point that qualified immunity does not apply, it must have earlier been developed in such a concrete and factually defined contest as to make it obvious to all reasonable government actors, in the defendant's place that "what he is doing" violated federal law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 523 (1987).

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel... the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates Federal law <u>in the circumstances</u>." *Lassiter v. Alabama A & M University*, 28 F. 3d 1146, 1150 (11th Cir. 1994) (emphasis in original).

Also, the Eleventh Circuit has held, "When the qualified immunity defense has been raised, an opposing plaintiff must convince the court that the law clearly established that 'the defendant's conduct in the circumstances amounted to 'deliberate indifference.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1185 (11th Cir. 1994) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989)). Although Plaintiff has submitted allegations to support his claim in a very limited outline to what actually occurred, he still has presented

nothing to indicate that Defendants are not entitled to qualified immunity. All claims against Defendants are due to be dismissed.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Defendants assert that the Complaint fails to state any cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants deny that Plaintiff is entitled to any relief.

### THIRD AFFIRMATIVE DEFENSE

Defendants plead the general issue.

### FOURTH AFFIRMATIVE DEFENSE

Defendants deny all material allegations not specifically admitted and demands strict proof thereof.

### FIFTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff has failed to state injuries or damages caused by Defendants which violated Plaintiff's constitutional rights.

### SIXTH AFFIRMATIVE DEFENSE

Defendants plead insufficiency of process.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants aver that they are entitled to the discretionary function immunity set out in §6-5-338 Ala. Code (1975).

## EIGHTH AFFIRMATIVE DEFENSE

Defendants plead qualified immunity.

## NINTH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff was guilty of negligence, wantonness, recklessness and intentional acts or criminal acts which proximately caused or contributed to the injuries or damages he claims.

## TENTH AFFIRMATIVE DEFENSE

Defendant asserts that the claims made by Plaintiff against the Defendant is completely without merit and should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e) (2) (B) (i).

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff's allegations of injury are, if any, of *de minimus* injury.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants plead the Alabama statutory monetary caps on punitive damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendants assert state actor immunity pursuant to Article 1 § 14, Constitution of Alabama (1901).

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendants aver that Plaintiff has failed to comply with the statutory requirements of §11-47-23 and §11-47-192, *Ala. Code* (1975, as amended) prior to filing suit.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendants aver that the Plaintiff comes before this Court with unclean hands.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendants plead and aver the affirmative defense of contributory negligence.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendants plead the affirmative defense of assumption of the risk.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent applicable, Defendants plead estoppel, waiver and laches.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff is not entitled to lost wages or for damages to the vehicle that he was driving.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendants aver that fictitious party practice is not permitted under the Federal Rules of Civil Procedure. *New v Sports & Recreation, Inc.*, 114 F. 3d 1092, 1094 n.1 (11th Cir 1997); *Edwards v Alabama Department of Corrections*, 81 f. Supp. 2d 1242, 1257 (M.D. Ala. 2000).

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants assert that the Plaintiff is not entitled to damages for mental anguish for the alleged acts of Defendant set forth in Plaintiff's Complaint. Defendant further states that any award of damages for mental anguish would violate Defendant's constitutional rights in that a determination of damages for mental anguish under federal or state law is vague, is not based on any objective standards and is not rationally related to any legitimate government interest.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendants assert that Plaintiff is not entitled to punitive damages and that the award of punitive damages would violate the Fourth, Fifth, Sixth, Eleventh and Fourteenth Amendments

of the Constitution of the United States and Article 1 §§ 6, 10, 11, 15, 22, 35, 36 and 43 of the Constitution of Alabama (1901).

## RESERVATION OF DEFENSES

The Defendant reserves the right to plead additional defenses as they become known in the course of discovery.

Submitted this the 14th day of November 2005.

*/s/ Kimberly O. Fehl*
Kimberly O. Fehl (FEH001)
Attorney for Defendants

Legal Division
City of Montgomery
Post Office Box 1111
Montgomery, Alabama 36101-1111
(334) 241-2050
FAX (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon all parties, as listed below, by United States Mail, postage prepaid, this the 14th day of November 2005.

Robert Andrew Wermuth, ECF #189991
Dorm 6/B-38, Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 360217-2615

*/s/*
OF COUNSEL