MONTGOMERY POLICE DEPARTMENT

SUBJECT:  POLICY - Motor Vehicle      SECTION:       1.550
          Pursuit                     DATE REVISED: 12/01


1.550    MOTOR VEHICLE PURSUIT:

A motor vehicle pursuit is an active attempt by a law enforcement officer, operating an emergency vehicle and utilizing simultaneously all emergency equipment, to apprehend one or more occupants of another moving vehicle, when the driver of the fleeing vehicle is aware of that attempt and is resisting apprehension by maintaining or increasing his speed, disobeying traffic laws, ignoring the officer, or attempting to elude the officer.

The Police Department's primary concern in pursuit situations is the protection of the lives and safety of all citizens and officers.

It is the view of the Department that although many pursuits incur too much risk to be justified, occasionally there are urgent circumstances when a proper law enforcement response requires a pursuit, and the degree of risk involved becomes justified. This policy is to be used as a guide to making intelligent and acceptable decisions on whether or not to pursue. The primary goal is to avoid excessive or unjustifiable risks.

The key factors to be considered when initiating or continuing a pursuit are justification, public and personal safety, alternatives, and control. Be aware that it is not a disgrace to break off a pursuit that has become too dangerous; such action is proper police procedure.

### BASIS FOR PURSUIT

1.  Some traffic violations, misdemeanors, and felonies.

2.  At least reasonable suspicion that violator's driving has become reckless, or is otherwise endangering human life.

Continuing pursuit requires justification based on potential threat to public and personal safety and/or seriousness of criminal activity.

### ALTERNATIVES TO PURSUIT

The essential purpose of pursuit is to apprehend a traffic law violator or criminal offender. If this apprehension can be accomplished by means other than high-speed pursuit, then law enforcement should try to use them. When offenders are known, they can probably be apprehended, without chases, in their homes or in places they frequent. Whether or not to engage in a high-speed chase then becomes a question of weighing the danger to the public of the chase itself against the danger to the public of the offender remaining at large. For anyone other than a violent felon, the balance weighs against the high-speed chase.

Discontinuing the pursuit does not mean giving up. It is possible that the pursuit will be reestablished by the pursuing officer or, through the use of the radio, by other police units. Also, the subject of a pursuit might be identified, and subsequently apprehended from information obtained from a description of the pursued vehicle or its plate number.

### PARTICIPATING UNITS

Only one clearly marked and fully equipped vehicle may participate in pursuit. In pursuit of suspected violent felons, one other marked vehicle may become backup unit. All other units have support roles.

### RADIO PROCEDURE

The pursuit vehicle must give the radio operator the following:

1. The violation justifying pursuit.

2. Location, direction, and approximate speed of car pursued.

3. Description of the vehicle and its occupants.

4. Progress of the chase.

5. If the pursuing unit is an off duty unit they must advise that they are.

6. Instruct the dispatcher to notify their supervisor and the Patrol Shift Commander.

7. Location of stopped vehicle.

The dispatcher or communications operator must:

1. Notify other units of pursuit.

2. Notify supervisor of pursuit unit and where pursuit is taking place.

   A) If the pursuing units supervisor is not <u>immediately</u> known or available, the dispatcher should advise the Patrol Shift Commander.

3. Direct units to communicate car-to-car when necessary.

4. Notify neighboring jurisdictions of a pursuit approaching their boundaries.

Only the officer and supervisor in the pursuit are to make radio transmissions. Other units are to monitor the pursuit. But circumstances may make it appropriate for a backup to make transmissions.

### USE OF SPIKE STRIPS

Spike strips will be carried, maintained and utilized by shift supervisors. Spike strips can be used to apprehend fleeing felony vehicles when the driver of the fleeing vehicle is aware of an attempt to stop him and he is a clear and present danger to the public and to the pursuing officers. At no time are spike strips to be used to stop traffic violators or less serious felonies which are not a clear and present danger to the public.

They are not to be used to assist other agencies who are pursuing on traffic violations or misdemeanors. As with our own Department, they may be used to stop felonies which are serious in nature and present a clear danger to the public if they are not stopped.

These guidelines may be superceded by order of the Chief or one of his administrative staff members.

The Special Operations Division may deploy spike strips during the course of special details and in controlled situations to prevent the initiation of a pursuit when a felony has been committed.

## TERMINATION

Pursuits may be terminated by apprehension of the offender, by decision of the pursuing officer, or by order of a supervisor.

Pursuits will be immediately terminated when:

1. Sworn supervisor orders pursuit terminated.

   A) Any sworn supervisor (Sergeant or above), regardless of their division assignment, has full authority to cancel a motor vehicle pursuit that they believe is unwarranted or poses a danger to the public.

   B) It will be the responsibility of that supervisor to notify the supervisor/commander of the division actually involved in the pursuit.

2. Suspect is known to officer and offense is traffic infraction, misdemeanor, or nonviolent felony.

3. Distance between officer and violator is such that continuing pursuit would require speeds endangering officer and the public.

4. Officer loses visual contact with suspect for extended time (approximately 15 seconds). Officer may continue to look for suspect, but at reduced speeds.

5. There is a clear and unreasonable hazard to officer, violator, or public. There is unreasonable hazard when speed dangerously exceeds normal flow of traffic, or when vehicular or pedestrian traffic necessitates erratic maneuvering exceeding performance capacities of vehicle or driver.

6. Violator goes wrong way down freeway, freeway access ramp or frontage road, divided highway, or one-way street.

7. Pursuit vehicle experiences equipment failure or malfunction involving lights, siren, radio, brakes, steering or other essential equipment and there are no backup or support units to take up the pursuit.

8. Environmental conditions such as rain, fog, or darkness substantially increase risk.

9. Officer is unfamiliar with area and is unable to notify dispatcher of his location and direction of pursuit.

10. Pursuing unit(s) loses radio contact with communications center.

Discontinuing the pursuit is not a reflection of an officer's courage or ability. In most cases, if an apprehension is not made quickly and at a reasonable speed, the most intelligent action for the officer is to discontinue the pursuit. This is the professional approach.

### BOXING-IN, RAMMING, AND ROADBLOCKS

Ramming, boxing-in, and blocking the road with police vehicles are prohibited. The only exception is boxing-in an unaware suspect to avoid a pursuit.

### USE OF FIREARMS IN PURSUIT

Firearms should NOT be used in an attempt to stop a pursued vehicle. This applies to officers at roadblocks, as well as to pursuing officers. A car travelling at high speed with a wounded or dead person at the controls, would be far more dangerous than the pursuit, and a danger that none of us can justify.

### SUPERVISORY ROLE

Policy fixes responsibility for supervising pursuits on field supervisors and/or shift commanders. Upon being notified of pursuit, they are to evaluate circumstances, decide whether to allow pursuit to continue, then monitor and evaluate its progress. They may cancel pursuit at any time. Field supervisors are to go to scene of terminated pursuit and take command.

### REVIEW PROCEDURES

Formal review of all pursuits is required. Supervisor of unit initiating pursuit submits written report outlining details of pursuit.

1. What was the reason for the pursuit?

2. What were the conditions of the pursuit (e.g., traffic condition(s), time of day, vehicle speed(s), number of MPD officers involved, and number of MPD vehicles involved)?

3. During the pursuit, did the actions of the involved officers(s) conform to established department policy?

4. Were there any exceptions to the policy? If so, what were they and why did they occur?

5. Was any action taken against the suspect vehicle (e.g., ramming or roadblock)? If so, what circumstances necessitated this action?

6. If personnel or vehicles from other agencies assisted in the pursuit, how many personnel and vehicles responded and what role(s) did the assisting agencies have in the pursuit?

7. Based on the information compiled for this report, did the reporting supervisors find that the pursuit was handled properly or should it have been handled differently? Briefly justify this finding.

Disciplinary action will be taken whenever members unreasonably expose themselves, or the public, to unjustifiable risks or fail to comply with directives.

## CONCLUSION

High speed vehicle pursuits are possibly the most dangerous of all ordinary police activities. Far more police vehicle chases occur each year than police shootings.

While potential liability from high speed pursuit is significant, the law does provide protection where agencies have made their best efforts to draft and implement specific pursuit directives, adequately train officers in the policy and techniques of pursuit driving; and closely supervise, review and evaluate implementation of pursuit policies. But the most important reason for effective pursuit policies is not minimization of liability, it is to protect life and property--the basic police mission.