IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2006 JAN 23 A 9:49

Robert Wermuth,
    Plaintiff,

VS:                                      Action No. CV-2005-644

Shannon Carroll Youngblood, et.al.,
    Defendants,


MOTION IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGEMENT


    Comes now Plaintiff, Robert Wermuth, Pro Se, and makes this motion in opposition to defendants motion for summary judgement and shows the Court that pursuant to rule 56(c); F.R.Civ.P. and the United States Supreme Court's holding in HARLOW VS. FITZGERALD , 457 U.S. 800, that "summary judgement is inappropiate when there are 'genuine issues of material fact'".

    Outlined below are specifically the differences in allegations of material fact as set out in the specified affidavits and exhibits submitted in this case:


ISSUES OF MATERIAL FACTS

    I (A)  Defendant Youngblood used excessive force when intentionally causing a vehicle collision.

    It is clear from the exhibits named herein that not only is there " Genuine issues of material facts" between the Plaintiff's and the Defendant's statements, but Defendant Youngblood gave conflicting statements in his own testimony, causing there to be (3) three sets of facts alleged about this issue.


PAGE 1

(B) In exhibit labeled "A" submitted by defendant Youngblood on September 30, 2003 states the reason he collided into the rear of Plaintiff's jeep was because "... vehicle 1 (jeep) was attempting to flee from vehicle 2 (patrol unit) at which time vehicle 1(jeep) made a sudden left hand turn causing vehicle 2(patrol unit) to collide into the rear of vehicle 1 (jeep)"[defendant makes no mention of brakes failing]

(C) In exhibit labeled "defendants exhibit "C" on August 23, 2005 in response to the allegations in this complaint, Defendant Youngblood swore, "... the brakes on my unit failed to stop my vehicle at which time I struck the red jeep" Defendant Yongblood went on to say, " ... stoped his patrol unit in the turning lane by using my emergency brake".

(D) In defendant Youngblood's "memoralization" of the pursuit dated September 30, 2003 labeled as "exhibit "b" defendant states " the brakes on my patrol unit failed to stop my vehicle" causing the collision, and then states " he stoped his patrol unit by using the emergency brake".
In the very same " memoralization" Youngblood swore that unit 388 (his patrol unit) was driven back to headquarters".

(E) In Plaintiff's exhibit "JJ" dated September 3, 2005, Plaintiff swore that defendant Yongblood struck his jeep "twice". Plaintiff stated " Youngblood rammed me the first time at the corner of South Holt street and Day Street road. Youngblood rammed me the second time at the intersection of Day Street and Hill Street, this time pushing me into a four (4) laned intersection". Plaintiff's exhibits labeled "FF" and "GG" shows the amont of damage done to Plaintiff's jeep after being rammed by defendant Youngblood.

II(A) Defendant Johnson used excessive force when he released a K-9 and commanded the K-9 to attack without warning.

In Plaintiff's exhibit labeled exhibit "HH", eyewitness Martha Humphrey swore that " Defendant Hill had the Plaintiff face down on the ground, in custody(i.e. Knelt down on Plaintiff's back with weapon in hand" when Defendant Johnson, without warning, released his K-9 partner and commanded him to attack Plaintiff".

(B) Plaintiff's exhibit labeled exhibit "AA" and "BB" are pictures which show the limited distance from which Martha Humphrey viewed the events that took place in the driveway of her home.

(C) In Plaintiff's exhibit labeled "JJ" Plaintiff swore " he exited his vehicle in his driveway, laid face down on the ground and was told he was under arrest by defendant Hill when defendant Johnson, without a warning released his K-9 partner and commanded him to attack Plaintiff".

(D) In defendants exhibit labeled "defendants exhibit E" Affidavit of defendant Johnson, defendant swore " the plaintiff exited the vehicle and attempted to run" and futher swore " I jumped out of my K-9 unit and gave the standard K-9 warning of 'stop or I'll release my dog' " further, "I released my K-9 partner 'Jethro', and as he approached the plaintiff the plaintiff tripped and fell down and my partner engaged his right arm".

(E) In plaintiff's exhibit labeled "JJ" Plaintiff swore " instead of taking me to the emergency room I was first taken to Headquarters where a 'use of force' report was compeleted and pictures of the injury's were taken" further " I was eventually taken to the emergency room and treated for my injurys."

(F) In the exhibit labeled "defendants exhibit E" defendant Johnson swore that "Plaintiff was treated by paramedics and transported to the hospital for treatment".

III (A)

PENDANT/ SUPPLEMENTAL JURISDICTION

The claims against Defendants Byrne and Hill are state law tort claims of deliberate indifference, negligence and/or wantoness as alleged in the original complaint and the first amendment to the complaint, therefore, this Court should take Pendant Jurisdiction pursuant to 28 U.S.C. 1367.

(B)   ISSUES OF MATERIAL FACT

In Plaintiff's exhibit labeled "JJ" Plaintiff swore that "Defendant Hill was the first one to approach, at which time he knelt down on top of me with his weapon in his hand and told me I was under arrest".

PAGE (3)

(C)  In Plaintiff's exhibit labeled "HH", eye-witness Martha Humphrey swore that "Defendant Hill had the Plaintiff face down on the ground, in custody, when Defendant Johnson, without warning, released his K-9 partner Jethro and commanded him to attack Plaintiff.

(D)  In Plaintiff's exhibit labeled "JJ", Plaintiff swore " instead of taking me to the emergency room, Defendants took me to headquarters where a 'USE OF FORCE' report was filed and pictures were taken" further, "I was eventually was taken to the emergency room and treated for my injuries".

(E)  Defendants exhibit labeled Defendant's exhibit "J" Defendant Hill swore he was " the lead unit" in the pursuit until Defendant Byrne passed him on a residential street [Hill street] making Defendant Byrne the lead unit". Defendant Hill further swore "he remained in his patrol unit at the scene of the arrest until " I saw Defendant Johnson and Defendant Byrne run up the driveway".

(F)  In Defendant's exhibit labeled Defendants exhibit "J", Defendant Hill swore the Plaintiff " was treated by paramedics at the scene and transported to the hospital".

IV

DENIAL OF AFFIRMATIVE DEFENSES

(A)  Plaintiff, having shown numerous issues of material fact would now address the affirmative defenses raised by the Defendant(s).

Plaintiff contends that there was in place at the time of the events in this complaint, a departmental policy which clearly outline the proper conduct of Defendant(s):
(1) MONTGOMERY POLICE DEPARTMENT, police K-9 training manual and policies and procedures, and;
(2)  Section 1.550, MOTOR VEHICLE PURSUIT MANUAL of the MONTGOMERY POLICE DEPARTMENT.

PAGE (4)

The Defendant(s) were noth exercising a "Discretionary Act, thereby, precluding immunity under Ala Code 1975 title 6-5-338(a).

The Defendant(s) are not entitled to "STATE AGENT IMMUNITY" as clearly outlined by the Alabama Supreme Court, in Howard v. City of Atmore, 887 so.2d 201 (Ala 2003), held that "a state agent acts beyond his authority and is, therefore, not immune when he failes to discharge duties pursuant to detailed rules and regulations".

MONTGOMERY POLICE DEPARTMENT own training manual (policy and proceedures) as set out in Standard Operating Proceedures for "VEHICLE PURSUITS" and "USE OF FORCE" details clearly the authorized conduct of police officers in situations idenitical to the underlying complaint.

The City of Montgomery is not entitled to immunity when the Defendants are not entitled to immunity and the City of montgomery, police department policies and practices violated the Constitutional rights of the Plaintiff.

(1) The MONTGOMERY POLICE DEPARTMENT failed to maintain records regaurding prior pursuits, which illustrates its lack of concearn for the potentially fatal pursuits, and;

(2) MONTGOMERY POLICE DEPARTMENT failed to adopt a policy which places meaningfull restraints on offocers regaurding institution, continuation, and termination of pursuits, and;

(3) MONTGOMERY POLICE DEPARTMENT failed to properly monitor and supervise pursuits leaving leaving all pursuits and decisions to highly emotional, adreanalin-charged officers instead of allowing objectively supervisory officials to make decisions concearning high speed pursuits, and;

(4) MONTGOMERY POLICE DEPARTMENT failed to adequately train its officers with respect to the philosophy of pursuits

including the justification for initiating, continuing, and terminating pursuits, and;

(5) MONTGOMERY CITY POLICE DEPARTMENT failed to hold officers accountable for improper decisions to initiate, continue, and terminate pursuits, and;

(6) MONTGOMERY CITY POLICE DEPARTMENT's policy of allowing participants in the pursuit to evaluate the pursuit is compounding the negligence.

Further, in support of this motion, Plaintiff specifically points out that Defendant Johnson violated clearly established departmental policy and proceedure when he engaged in a vehicle pursuit. (see exhibit marked MONTGOMERY CITY POLICE DEPARTMENT K-9 unit rules and policy manual) section "X" (a),(c), which states " a K-9unit will not be involved in chases or pursuits", (c) " If a K-9 unit calls for assistance in stopping a vehicle and the vehicle attempts to elude the marked unit, the K-9 unit will immediately drop out of the pursuit".

Defendant Youngblood violated clearly established departmental policy and proceedure when intentionally assaulting Plaintiff with his patrol unit, causing extreme danger to the public as well as the Plaintiff. (see motor vehicle pursuit marked "BOXING IN AND RAMMING" which states "Boxing in and ramming and roadblocks and blocking the road with a police vehicle are "PROHIBITED".

Wherefore, based on the foregoing this Honorable Court must deny the motion for summary judgement and set a date for trial on the issues.

Respectfully submitted,

Robert Wermuth

Done this 19th day of January, 2006.

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. mail properly addressed to the following on this 19th, day of JANUARY 2006

*Robert Wepmuth*
18925

KIMBERLY O. FEHL
CITY OF MONTGOMERY
LEAGAL DEPARTMENT
103 N. PERRY street
MONTGOMERY, AL 36104