IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT ANDREW WERMUTH, | ) | |
| AIS # 189991, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv644-CSC |
| | ) | (WO) |
| SHANNON CARROL YOUNGBLOOD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Robert Andrew Wermuth ("Wermuth") claims that City of Montgomery Police Officers Everette L. Johnson ("Johnson"), David R. Hill ("Hill"), and Roderick Byrne ("Byrne") used excessive force against him in violation of his constitutional rights.[1] In addition, Wermuth asserts state law claims of assault and battery against Johnson, Hill, and Byrne and assault with a motor vehicle against Officer Shannon C. Youngblood ("Youngblood") and R. D. Calhoun ("Calhoun").[2]

---

[1] Specifically, Wermuth asserts that the defendants' use of excessive force is a violation of the Eighth Amendment. Because Wermuth's claims arise in the context of an arrest or investigatory stop, only the Fourth Amendment is implicated. *See Graham v. Conner*, 490 U.S. 386, 394 (1989).

[2] In his initial complaint, Wermuth names Calhoun as a defendant. Wermuth subsequently filed an amendment to his complaint and a motion to correct a clerical error, in which he indicates that Calhoun " is no longer implicated" in the case. (Doc. Nos. 20 & 21.) Therefore, the claims against Calhoun are due to be dismissed.

The defendants filed a special report and supporting evidentiary materials addressing Wermuth's excessive force and state law claims. The court deems it appropriate to treat the special report as a motion for summary judgment.[3] Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses filed by Wermuth, the court concludes that the motion for summary judgment with respect to Wermuth's claims against Johnson, Hill, and Byrne should be denied. The court further concludes that the motion for summary judgment with respect to Wermuth's claims against Youngblood and Calhoun should be granted.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiffs are required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). They must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that

---

[3] Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III.  FACTS[4]

During the early morning hours of September 30, 2003, Wermuth shoplifted two 18-pack cases of beer from the Kwik Shop on North East Boulevard in Montgomery, Alabama. (Doc. No. 46, Aff. of Wermuth at p.1.) Seeking the assistance of law enforcement, the store clerk ran outside and "flagged down" a patrol car. (Doc. No. 6, Defs' Ex. A at p.1 & B at p.1.) When Officers Melva C. Deramus and James C. Welch ("Welch") drove into the parking lot, the clerk pointed to Wermuth's red Jeep and asked them to stop the vehicle. (*Id.*)

---

[4] The court makes no findings of facts but is merely reciting the facts in the light most favorable to the plaintiff. A trier of fact may find that the facts are different.

The officers got out of their car and Welch asked Wermuth to exit his vehicle. (Defs' Ex. A at p.1.) Wermuth started his car and began driving away. (Doc. No. 12 at p. 2.) When rounding a corner in the parking lot, Wermuth's vehicle "scraped against" the patrol car. (*Id*.) Welch then reached into Wermuth's vehicle and attempted to turn off the ignition. (*Id*.) As Wermuth continued driving away, Welch fell down, injuring his hand and elbow. (*Id*.) The officers contacted the dispatcher, who notified other officers in the area to be on the lookout for Wermuth's vehicle. (Defs' Ex. B at p. 2.)

While Youngblood was conducting a routine patrol, he observed a Jeep matching the description of Wermuth's vehicle on the Atlanta Highway and began following the car. (Defs' Ex. C at p. 1.) The dispatcher informed Youngblood that Wermuth was wanted for third-degree theft, striking a police officer, and leaving the scene of an accident. (*Id*. at p. 2.) At the interchange of Interstates 85 and 65, Youngblood turned on his emergency lights and sirens and attempted to stop Wermuth's vehicle. (*Id*.) As Wermuth turned onto Day Street, Youngblood's vehicle struck Wermuth's Jeep. (Doc. No. 12 at p. 4.) Youngblood continued following Wermuth's vehicle into a residential neighborhood. (Defs' Ex. C at p. 2.) When Wermuth turned onto Hill Street, Youngblood's vehicle again struck the rear of Wermuth's vehicle. (Doc. No. 12 at p. 4.) Youngblood discontinued the pursuit and began preparing an accident report. (Defs' Ex. C at p. 2.)

As other officers in the area followed him through a residential neighborhood,

Wermuth pulled into the driveway of his residence and parked his car. (Doc. No. 12 at p. 3.) The officers stopped their cars and approached Wermuth, who surrendered and lay on the ground. (*Id*. at p. 3.)  As Hill drew his gun and knelt on top of Wermuth, Johnson commanded his dog, Jethro, to attack. (Doc. No. 12, Pl's Ex. HH at p. 2.) Although Wermuth begged the officers to restrain his dog, Byrne ordered the officers to stay away and Jethro continued attacking him for several minutes. (Doc. No. 12 at p. 3; Doc. No. 20 at p. 3.) After the attack, Wermuth was taken to the police station, where he completed a "use of force" report. (Doc. No. 12, Pl's Ex. JJ at p. 2.)  He subsequently was taken to the emergency room and received treatment for his injuries. (*Id*.)

## IV.  DISCUSSION

### A.  The Car Chase

Wermuth asserts that Youngblood is liable under state tort law for assault. Specifically, Wermuth alleges that at two different intersections Youngblood deliberately crashed his vehicle into his Jeep during a hot pursuit through the streets of Montgomery. Youngblood denies crashing twice into Wermuth's vehicle; however, he admits that his car hit Wermuth's Jeep at the intersection of Day Street and Hill Street due to brake failure. (Doc. No. 6, Defs' Ex. C at p. 2.)  In addition, Youngblood asserts that he is entitled to discretionary function immunity pursuant to ALA. CODE § 6-5-338(a) (1975).

Section 6-5-338(a) provides, in pertinent part, as follows:

5

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

When determining whether discretionary immunity applies to a law enforcement officer's actions, "the court first determines whether the . . . defendant was performing a discretionary function when the alleged wrong occurred; if so, 'the burden shifts to the plaintiff to demonstrate that the defendant[] acted in bad faith, with malice or willfulness in order to deny [him] immunity.'" *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003) (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 9 (11th Cir. 2001)). With respect to discretionary acts, there "'is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" *Wood*, 323 F.3d at 884 (quoting *Sheth v. Webster*, 145 F.3d 1231, 1239 (11th Cir. 1998)).

The actions about which Wermuth complains occurred while Youngblood was

6

attempting to stop and apprehend Wermuth because he was wanted for third-degree theft, striking a police officer, and leaving the scene of an accident. In addition, Wermuth was speeding through the streets of Montgomery and continued to flee the scene after Youngblood's car initially ran into Wermuth's vehicle. Youngblood's attempt to prevent Wermuth from further endangering others' lives in the community was obviously within the line and scope of his law enforcement duties. Moreover, Wermuth has failed to adduce any evidence which would support a finding of fact that Youngblood's actions were willful, malicious, or in bad faith. Accordingly, the court concludes that Youngblood is entitled to discretionary function immunity pursuant to ALA. CODE § 6-5-338 (1975) on Wermuth's assault claim against Youngblood. Thus, Youngblood's motion for summary judgment is due to be granted.

### B. The Dog Attack

Wermuth claims that Johnson, Hill, and Byrne are liable under the Fourth Amendment for violating his right to be free from excessive force and under state tort law for assault and battery. The defendants deny that they used excessive force against Wermuth and maintain they are entitled to qualified and discretionary immunity.

**(1)    Qualified Immunity**

When evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so,

proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197 (11th Cir. 2001).

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989). To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

When balancing the necessity of using some force against an arrested person's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Thus, the force used by a police officer during the course of an arrest "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Wermuth alleges that, after he voluntarily surrendered and lay on the ground, Hill knelt on top of him with his gun drawn and Johnson commanded his dog, Jethro, to attack him. (Doc. No. 12, Pl's Ex. HH at p. 2.) He further alleges that Byrne ordered the officers to stay away from the dog and watched as Jethro continued attacking him for several minutes. (Doc. No. 12 at p. 3; Doc. No. 20 at p. 3.) Consequently, Wermuth has alleged the deprivation of a constitutional right. *See Saucier v. Katz*, *supra.*

The defendants deny Wermuth's allegation and assert that the application of force was necessary because Wermuth attempted to flee the scene and continued to struggle to get away. Thus, there is a factual dispute concerning whether there was a need to use force and whether the force used was excessive under the circumstances.

But this factual dispute is not dispositive because court must also determine whether, assuming the officers used the force as described, those actions violated clearly established constitutional law. *Id.* In determining whether qualified immunity bars the plaintiff's claim, "[this court] does not look at the subjective intent of the officers." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002). Rather, "the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Wermuth alleges that, even though he voluntarily surrendered, Hill held him down on the ground and that Johnson ordered his dog to attack him. Additionally, he alleges that, as he

9

begged the officers for help, Johnson and Byrne stood by and watched Jethro continue to attack him. Such conduct is clearly established as unlawful. *Priester v. City of Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir.2000) (denying qualified immunity to officers who allowed a police dog to attack an arrestee who was already on the ground). Therefore, qualified immunity does not bar the plaintiff's excessive force claim against Hill, Johnson, and Byrne at this time. Thus, the motion for summary judgment with respect to the Fourth Amendment claim against Hill, Johnson, and Byrne should be denied.

**(2)   Assault and Battery**

Hill, Johnson, and Byrne assert that they are entitled to discretionary immunity with respect to Wermuth's assault and battery claims. As previously discussed, Alabama law provides that a law enforcement officer is immune from suit in his personal capacity for "'exercising judgment in the enforcement of the criminal laws . . . , including but not limited to, law-enforcement officers' arresting or attempting to arrest persons.'" *McCray v. City of Dothan*, [No. 01-15756-DD] 2003 WL 23518420, at *6 (11th Cir. 2003) (unpublished) (quoting *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)). Immunity is not available, however, when an officer "'acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under mistaken interpretation of the law.'" *Id.*

In this case, Wermuth alleges that, after he voluntarily surrendered, Hill held him down, Johnson commanded his dog to attack him, and that Byrne allowed the attack to

10

continue for several minutes. Thus, the facts as alleged by Wermuth support an inference that the defendants' actions were malicious. *See McCray*, at *7 (holding that, because the plaintiff made no offensive move, the defendants' subsequent throwing of the plaintiff to the floor and pinning him against a salad bar in a choke-hold supported an inference of action with malice). Therefore, when viewing the facts in the light most favorable to the plaintiff, the court concludes that discretionary immunity does not bar Wermuth's state law claims against Hill, Johnson, and Byrne at this time. Consequently, the motion for summary judgment with respect to Wermuth's state tort claims against Hill, Johnson, and Byrne are due to be denied.

## V. CONCLUSION

Accordingly, it is ORDERED as follows:

1. The motion for summary judgment with respect to the claims against Youngblood and Calhoun be GRANTED. (Doc. Nos. 6 & 30.)

2. Youngblood and Calhoun be dismissed as defendants.

3. The motion for summary judgment with respect to the claims against Hill, Byrne, and Johnson be DENIED. (Doc. No. 30.)

4. That this case be set for a non-jury trial on May 30, 2006, at 9:00 a.m. in Courtroom 4B, United States Courthouse Complex, One Church Street, Montgomery, Alabama.

5.     WITNESSES.

(a)    <u>All</u> parties shall file a witness list at least 20 days before the trial. Witnesses not on the list will not be heard.

(b)    *Cases Proceeding In Forma Pauperis*.  If the plaintiff desires to procure attendance of witnesses by writ or subpoena, he shall file and serve – not later than 20 days before trial – a witness list containing the names, AIS number where applicable and addresses of *all* witnesses – whether a subpoena is sought or not – (inmate or civilian status) and a brief statement of the expected testimony of each witness, whether a subpoena is sought or not.  M.D. ALA. LR 45.1(b).  The plaintiff should be specific in stating the witnesses' expected testimony, because if their testimony is not material or is simply repetitive the court may in its discretion decline to order the subpoena of the witness.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).

Whether the witness is subpoenaed by a pauper or not, Rule 45(c) requires that your subpoena must be accompanied by an attendance fee ($40.00 per day), a subsistence fee ($99.00 per day) if overnight stay is required, and actual expenses of a common carrier or mileage (44.5¢ per mile each way), or it need not be obeyed.  The witness will be so informed by the subpoena.  It is the responsibility of the party requesting the subpoena to provide that money to the clerk's office for tender with the subpoena.

(c)    *Subpoena by Non-Paupers*.  Subpoenas may be served in accordance with

FED.R.CIV.P. 45(b).  If service by the United States Marshal is requested, the subpoena must be filed not less than 14 calendar days prior to the date of the trial and must contain the complete name and address of the witness.  M.D. ALA. LR(a)(1).

4. *Production of Plaintiff.*  The persons having custody of the plaintiff shall produce the plaintiff at trial.

Done this 14th day of April, 2006.

　　　　　　　　　　　　　　　　/s/Charles S. Coody
　　　　　　　　　　　　　　　CHARLES S. COODY
　　　　　　　　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE