IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT ANDREW WERMUTH, ) | |
| AIS # 189991, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv644-CSC |
| ) | (WO) |
| SHANNON CARROL YOUNGBLOOD, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Robert Andrew Wermuth ("Wermuth") claims that City of Montgomery Police Officers Everette L. Johnson ("Johnson"), David R. Hill ("Hill"), and Roderick Byrne ("Byrne") used excessive force against him in violation of his constitutional rights.[1] In addition, Wermuth asserts state law claims of assault and battery against Johnson, Hill, and Byrne. On May 30, 2006, the court held a non-jury trial in this case.[2] Based on the evidence presented, the court concludes that judgment should be entered in favor of the defendants.

---

[1] Specifically, Wermuth asserts that the defendants' use of excessive force is a violation of the Eighth Amendment. Because Wermuth's claims arise in the context of an arrest or investigatory stop, the Fourth Amendment is implicated. *See Graham v. Conner*, 490 U.S. 386, 394 (1989).

[2] Earlier, the court granted summary judgment in favor of two other defendants who were dismissed.

## II. DISCUSSION

A. The Findings of Fact and Credibility Determination

On September 30, 2003, Wermuth shoplifted two 18 beer packs from the Kwik Shop on North East Boulevard in Montgomery, Alabama. A store clerk ran outside with a telephone and "flagged down" a patrol car. As Officer James C. Welch ["Welch"] and his partner parked their car, the clerk pointed to Wermuth's Jeep, told the officers that the driver had stolen two cases of beer, and asked them to stop the vehicle. When Welch approached Wermuth and asked him to exit his vehicle, Wermuth started his car with a "jimmied" screwdriver and began driving away. Welch reached into the vehicle and attempted to stop the car. Not heedful of Welch's situation, Wermuth continued driving, causing Welch to be dragged along the service road for approximately thirty feet as he held onto the side of Wermuth's vehicle.[3] While Welch was holding Wermuth's Jeep it crashed into Welch's patrol car. Welch suffered a fractured elbow and shoulder injuries as a result of the incident. After Welch fell from the car, Wermuth raced away from the scene.

Welch then contacted the police dispatcher and informed her of the circumstances, including that he had been injured and that the driver of the Jeep started the vehicle's ignition

---

[3] Welch specifically testified that he was "drug/running aside the vehicle" and that "his feet could not keep up with the speed of [Wermuth's] vehicle."

with a screw driver. He also told her the direction in which Wermuth fled. The dispatcher then notified other officers in the area that an officer was struck, that a "beer run" was in progress, and to be on the lookout for Wermuth's Jeep.

Shortly after Wermuth left the gas station, Officer Shannon C. Youngblood recognized Wermuth's Jeep and began following the vehicle. While on routine patrol on Forest Avenue, Hill heard over his radio that Youngblood's and Wermuth's vehicles were nearby. When Welch's vehicle passed his patrol car, Hill began following Youngblood and Wermuth through the neighborhood and onto the interstate. Near the interchange of Interstate 85 and Interstate 65, Youngblood attempted a traffic stop of Wermuth's vehicle. Wermuth refused to stop, and a high speed chase ensued. Several officers in the area also joined the pursuit.

As the officers pursued Wermuth through a residential neighborhood, Wermuth pulled into the driveway of his residence and parked his Jeep. Johnson arrived on the scene and he and his dog, Jethro, got out of their patrol car. Shortly after Johnson's and Wermuth's arrival, several other officers drove up to the residence and parked their vehicles. As Wermuth got out of his vehicle and began running toward the officers, Johnson gave Wermuth three loud warnings, yelling "Stop or I'll send my dog." Wermuth did not stop, and Johnson released his dog. Wermuth tripped and fell; Jethro secured him by biting his arm. As other officers began approaching the area, Byrne ordered them to stay away and

warned them that "Jethro was out." As all of this was happening, Hill pulled his gun and briefly inspected the Jeep. After securing Jethro, Johnson asked Hill for assistance and Hill handcuffed Wermuth. Afterwards, Wermuth was transported to the City of Montgomery Police Department and examined by paramedics. He was subsequently taken to a local hospital and treated by medical personnel.

Wermuth's version of the facts is markedly different. Wermuth denies that he ran toward the officers and claims that, after parking his vehicle, he lay on the ground with outstretched arms, and voluntarily surrendered. Wermuth testified that Byrne released his dog and that the dog attacked him after he surrendered. Wermuth's friend, Martha L. Humphrey, also testified that she saw the dog attack Wermuth after he lay on the ground.

Given the conflicting testimony, it is necessary for the court to make findings of credibility and fact. The court must weigh the testimony of the witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand. *Gallego v. U.S.*, 174 F.3d 1196, 1198 (11th Cir. 1999). Wermuth's demeanor, coupled with his obvious interest in the outcome of this case, militates strongly against his veracity. During cross-examination by defense counsel, Wermuth became argumentative when asked questions that challenged his version of the facts. After careful consideration of the testimony and the demeanor of the witnesses, the court finds that the testimony of Wermuth is less than credible regarding the events on

4

September 30, 2003.[4] In short, after careful consideration of Wermuth's demeanor and the other *Gallegos* factors as set out above, the court concludes that Wermuth's testimony regarding his encounter with several Montgomery Police Department officers is not worthy of belief. Finally, the court finds that the defendants and their witnesses, even considering their obvious interest in a favorable outcome, to be credible based upon the court's observation of the officers and their demeanor during their testimony. Next, this court must determine whether the officers' use of force was justified under the circumstances.

### B. The Fourth Amendment Claim

Wermuth claims that Johnson, Hill, and Byrne are liable under the Fourth Amendment for violating his right to be free from excessive force. The Fourth Amendment's right to freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989). To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests

---

[4] The court likewise finds that the testimony of Wermuth's friend is less than credible in light of her obvious interest in the case and her demeanor when testifying regarding the facts of the case.

at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

When balancing the necessity of using some force against an arrested person's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Thus, the force used by a police officer during the course of an arrest "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

First, this court must determine whether there was a need for the application of force. In this case, Wermuth injured a police officer after stealing two packs of beer from a gas station and led officers on a high speed chase throughout residential neighborhoods, endangering the lives of officers and members of the public. In addition, he ignored officers attempts to stop his car and at his residence did not comply with Johnson's orders to stop and continued running toward the officers. The defendants were amply justified under these circumstances in using force to protect the officers and residents in the area.

The next question concerns the relationship between the need and the amount of force that was used. Because Wermuth attempted to evade arrest by leading the officers on a police chase, refused to comply with Johnson's orders to stop running, failed to heed

6

warnings that a police dog would be released, and ran toward the officers, any reasonable officer readily could conclude that Wermuth posed an immediate threat to the safety of the officers and members of the public. In addition, the evidence demonstrates that the officers released Jethro from Wermuth's arm as soon as Hill and Johnson were able to apprehend and begin handcuffing Wermuth. Furthermore, although it is undisputed that Wermuth was treated by medical personnel, there is no evidence demonstrating that he suffered any serious injury as a result of the incident. Thus, the court finds that the amount of force was reasonably proportionate to the need for that force. The court therefore concludes that judgment should be entered in favor of the defendants with respect to Wermuth's excessive force claim.

### C. The Assault and Battery Claims

Wermuth claims that Johnson, Hill, and Byrne are liable under state tort law for assault and battery. Alabama law provides that a law enforcement officer is immune from suit in his personal capacity for "'exercising judgment in the enforcement of the criminal laws . . . , including but not limited to, law-enforcement officers' arresting or attempting to arrest persons.'" *McCray v. City of Dothan*, [No. 01-15756-DD] 2003 WL 23518420, at *6 (11th Cir. 2003) (unpublished) (quoting *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)). Immunity is not available, however, when an officer "'acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under mistaken interpretation of the

law.'" *Id.*

As previously discussed, it is clear that the defendants' actions were justified and that the amount of force was reasonable under the circumstances. There is no evidence suggesting that the defendants applied force for any reason other than to protect the officers and members of the public by apprehending Wermuth. Force was not used against Wermuth maliciously and sadistically to cause harm. Consequently, discretionary immunity bars Wermuth's state law claims against Hill, Johnson, and Byrne.

### III. CONCLUSION

Accordingly, the court concludes that judgment should be entered in favor of the defendants and that this case be dismissed with prejudice. A separate final judgment order will be entered.

Done this 5th day of July, 2006.

        /s/Charles S. Coody
    CHARLES S. COODY
    CHIEF UNITED STATES MAGISTRATE JUDGE